**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO. 1:04 CR 107** |
| | ) | |
| **PLAINTIFF** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **GEORGE M. CARSON** | ) | **AND ORDER** |
| | ) | |
| **DEFENDANT** | ) | |

This matter is before the Court upon the Defendant's Motion for Bond and Stay of Sentence Pending Appeal. See (Dkt. # 42).

**I.      BACKGROUND**

The Grand Jury for the United States District Court for the Northern District of Ohio issued an Indictment charging the Defendant, George M. Carson, with Embezzlement by a Bank Employee in violation of Title 18, United States Code section 656.[1] The Indictment

---

[1] Title 18, U.S.C. § 656 provides, in pertinent part:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch,

specifically charged the Defendant with embezzling approximately $214,635.00 from Key Bank, N.A ("Key Bank").

The Defendant entered into a plea agreement with the Government on June 9,2004, whereby the parties stipulated to the following factual basis:

> The Defendant was employed by Key Bank, NA at the Tiedeman Road Cash Vault. Key Bank, NA was an insured bank because its accounts were insured by the Federal Deposit Insurance Corporation. Starting in September 2002, until about May 2003, the Defendant repeatedly removed cash deposits that were made by a Key Bank, NA customer and entrusted to the Defendant's care for processing, all with the intent to injure and defraud the Key Bank, NA.

See (Plea Agreement ¶ 11). The plea agreement lacked any provision regarding the amount of loss as well as any stipulations regarding the applicable United States Sentencing Commission Guidelines (hereinafter the "Guidelines") calculations.

On July 15, 2004, the United States Probation Office for the Northern District of Ohio ("U.S. Probation") issued a Presentence Investigation Report ("PSI Report") attributing

---

> agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or holding company, branch, agency, or organization or any moneys, funds, assets or securities intrusted to the custody or care of such bank or holding company, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $ 1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 656.

to the Defendant a Base Offense Level at 6 pursuant to U.S.S.G. § 2B1.1(a)(2).[2] See (PSI Report, dated July 15, 2004). Additionally, the PSI Report prescribed a twelve level increase as a result of the specific offense characteristic found at U.S.S.G. § 2B1.1 (b)(1)(G) because "the amount of loss exceeded $200,000." See (PSI Report, dated July 15, 2004).

Following a three level reduction for acceptance of responsibility, the PSI Report indicated a Total Offense Level at 15. See (PSI Report, dated July 15, 2004). U.S. Probation found that the Defendant had a Criminal History Category of I (zero criminal history points) thereby rendering an appropriate Guidelines range of eighteen to twenty-four months. See (PSI Report, dated July 15, 2004).

On August 27, 2004, the U.S. Probation Office issued a Revised PSI Report noticing the Government's objection, which provided: "The government objects that the Defendant has consistently denied that his relevant conduct includes more than 4 or 5 money bags he removed from the vault. If the defendant's letter concerning Acceptance of Responsibility does not admit to the total amount of the loss, the United States will argue strenuously against any reduction for acceptance of responsibility." See (Revised PSI Report, dated Aug. 27, 2004). The Revised PSI Report indicated that the appropriate Guidelines range, without acceptance of responsibility, was 27 to 33 months (Total Offense Level 18 with Criminal

---

[2]The PSI Report indicated that the Base Offense Level was found in "U.S.S.G. § 2B1.1(a)(1) and call[ed] for a Base Offense Level of 7." However, in the calculations section of the PSI Report, the Base Offense Level was reported at 6. The Probation Officer confirmed via telephone conversation with the Court on September 27, 2004 that the appropriate Base Offense Level was 6 pursuant to U.S.S.G. § 2B1.1(a)(2). Counsel have been notified of the typographical error.

History Category I). See (Revised PSI Report, dated Aug. 27, 2004). The Defendant did not file any objections to the Revised PSI Report.

However, the Defendant subsequently filed a Sentencing Memorandum requesting the Court "to reject the government's argument that Mr. Carson [was] responsible for the Key Bank NA loss amount of $214,635.00." (Dkt. # 19 at 1.) In said Sentencing Memorandum the Defendant "admit[ted] to embezzlement of twelve deposits totaling $103,138.50." (Dkt. # 19, Mem. In Support at 5). The Defendant calculated the Base Offense Level at 6 with an eight level increase for the amount of loss of more than $70,000 and less than $120,000 as provided in U.S.S.G. § 2B1.1 (b)(1)(E). Following a two level reduction for acceptance of responsibility, the Defendant asserted that the Total Offense Level was 12and Criminal History Category I, thereby subjecting him to a Guidelines range of 10 to16 months imprisonment. The Defendant advised that the Court could impose a split sentence pursuant to U.S.S.G. § 5C1.1(d), requiring a minimum of "one-half the sentence to be served in imprisonment, with a condition that substitutes community confinement or home detention." (Dkt. # 19, Mem. In Support at 9-10.)

The Court held a sentencing hearing on September 28, 2004. In light of the unsettled state of sentencing law in light of Blakely v. Washington, 124 S. Ct. 2531 (2004), the Court advised the Defendant that it would only consider the specific offense characteristics, adjustments and enhancements charged in the Indictment and to which the Defendant had plead guilty or that were sustainable beyond a reasonable doubt. The Court presented the Defendant with the following three options:

> (1) Request that the Court sentence him pursuant to statutory minimums and maxima;
>
> (2) Consent to a sentencing under the Guidelines subject to a jury trial; or
>
> (3) Consent to a sentencing under the Guidelines, waive the right to a jury trial, and have the Court determine any increases in the defendant's sentence beyond a reasonable doubt.

See (Transcript of Sentencing Hearing before the Honorable Peter C. Economus United States District Judge dated September 28, 2004 at 2-4).[3] After discussing the matter with counsel, the Defendant waived any Blakely challenge and consented to having the Court decide any sentencing enhancements using a beyond a reasonable doubt standard. See (Tr. at 6). The parties thereafter presented real and documentary evidence, as well the testimony of witnesses, in regard to sentencing. The court afforded the parties with leave to submit post-hearing briefs.

The Court issued a Memorandum Opinion and Order on December 9, 2004 finding that the appropriate Base Offense Level was 6. See (Dkt. # 29) (citing U.S.S.G. § 2B1.1(a)(1)). Pursuant to 2B1.1(b)(1)(G), the Court increased the offense level by 12 levels because the amount of loss exceeded $200,000. See (Dkt. # 29). The Court determined that the total offense level was 18 and that the Defendant fell within the Criminal History Category I, resulting in an Guidelines range of 27 to 33 months. See (Dkt. # 29). The Court ultimately sentenced the Defendant to *inter alia* 27 months imprisonment and recommended

---

[3] All further references to the sentencing hearing transcript hereinafter shall be cited as (Tr. at __).

that the Defendant participate in the shock incarceration (boot camp) program. See (Dkt. # 32).

The Defendant immediately filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit. See (Dkt. # 33). The instant motion ensued.

## II.     LAW AND ANALYSIS

Section 3143 of the Bail Reform Act of 1966, 18 U.S.C. §§ 3141-3156, provides, in pertinent part:

> (b) Release or detention pending appeal by the defendant.
> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
> 
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title [18 USCS § 3142(b) or (c)]; and
> 
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> 
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> > 
> > If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title [18 USCS § 3142(b) or (c)], except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 [18 USCS § 3142] and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

18 U.S.C. § 3143(b).

The Defendant advances two grounds as support for release during the pendency of his appeal: (1) the United States Court of Appeals for the Sixth Circuit is likely to remand the matter for resentencing in the wake of Booker v. United States, 125 S.Ct. 738 (2005); and (2) the Court may reconsider its sentence in light of the Bureau of Prisons' disbandment of the "boot camp" program. See (Dkt. # 42). The Court finds that each argument is without merit.

The record before the Court indicates that the Defendant was informed of his right to await clarification from the United States Supreme Court as to the state of sentencing law and the Defendant, with the advice of counsel, knowingly, intelligently and voluntarily waived such appeal rights. The United States Court of Appeals for the Sixth Circuit repeatedly has upheld such waivers. See United States v. Luebbert, No. 03-5598 (6th Cir. June 1, 2005) (citing United States v. Bradley, 400 F.3d 459 (6th Cir. 2005) United States v. Yoon, 398 F.3d 802 (6th Cir. 2005)). Therefore, the Defendant does not meet the requirements of 18 U.S.C. § 3143(b)(1)(B). In any event, the Court afforded greater protections to the Defendant – i.e., the imposition of a reasonable doubt standard – than that currently provided under the Advisory Guidelines regime. Consequently, it is highly unlikely that the Court would impose a lesser / modified sentence on the Defendant.

Accordingly, the Defendant's Motion for Bond and Stay of Sentence Pending Appeal, see (Dkt. # 42), is **DENIED**.

**IT IS SO ORDERED.**

<u>**/s/ Peter C.Economus - June 6, 2005**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**